22-1645, Janet Harvey, Joseph Harvey v. Permanent Mission of The Republic of Sierra Leone I understand we have Mr. Rensler, the appellant, and you would like to reserve two minutes for rebuttal, is that right? That's correct, and can the court hear me? Yes, thank you for your testimony. Thank you, Your Honor, and may it please the court, Nick Rensler of Foley-Hellack for the appellant, Sierra Leone's permanent mission to the United Nations. In this case, plaintiffs bring claims for negligence and nuisance against Sierra Leone and its subcontractor and general contractor based upon injuries that they allegedly suffered from the renovation of Sierra Leone's mission to the United Nations. According to the amended complaint, substantially all of the renovations were performed by the subcontractor co-defendants who were hired by Sierra Leone's general contractor, co-defendant Fairfield Construction. The district court erroneously held that both the commercial activity exception and the non-commercial tort exception to the Foreign Sovereign Immunities Act apply to plaintiff's claims against Sierra Leone. I'll turn first to the commercial activity exception. For a suit to be based upon a commercial activity of a foreign state, the commercial activity must be the gravamen of that plaintiff's suit. Where there are two categories of acts, the Supreme Court's decision in OBB v. Sachs counsels that the court is to zero in on the core of plaintiff's suit. Here, we have two categories of acts. On the one hand, we have Sierra Leone's arguably commercial contract with the general contractor, and on the other hand, we have the subcontractor's physical acts and omissions that allegedly caused plaintiff's injuries. This court, in MMA Consultants v. Peru, counseled that the way to determine what the gravamen of a complaint is, is to ask one simple question. What action of the foreign state actually injured the plaintiffs? And here, the answer is that no commercial activity of Sierra Leone actually injured the plaintiff. There's no allegation in the amended complaint that Sierra Leone's entry into the contract with its general contractor. But isn't the test for, except for the commercial act, activity exception, that the foreign entity exercises only those powers that can also be exercised by private citizens rather than those peculiar to sovereigns? So in this case, entering into a contract to fix or repair the building is something that any private citizen could enter into. Does it matter that there's a subcontractor? You're almost saying if you hire a general contractor, you can immunize yourself. I'm failing to understand how you get around the test simply because you have a general contractor versus a subcontractor. I understand the question, Your Honor. The test to which you point to goes to whether a particular activity is a commercial activity or not. But before you get to that test, you have to ask what the gravamen of the plaintiff's complaint is here. So assuming that the, let's just say that Sierra Leone entered into commercial activity, that's a commercial activity, but that's not what actually caused plaintiff's injuries. Because the plaintiff has not alleged that the actual entry into the contract or the performance of any contractual duty is what caused their injury. So I would say that there's nothing, no commercial activity. It's not the duties of the work that was to be performed under that contract that caused the injury. The contract is to do repairs, and the claim is that those repairs were conducted in a way that injured the plaintiff here. Your Honor, the repairs were not carried out by Sierra Leone. So it's not what the acts of Sierra Leone is. In universal trading- So I guess that gets back to my question. Is your point that your client has immunity here simply because they hired a contractor, they hired a subcontractor, and they're not physically in the building stripping walls, bringing fire extinguishers, opening elevator shafts? Is that the point? Effectively, the point is that under the commercial activity exception, there's no jurisdiction because what you're describing, which is what actually injured the plaintiff, is not the commercial activity of the foreign state. The amended complaint makes no allegations that permit any of the acts of the subcontractors to be imputed to the foreign state. Now, it is possible, however- They're not as agents? No, Your Honor. The amended complaint does not plead the high bar that this court has noted in Arch Trading v. Ecuador that is required to impute the acts of a third party, including a subcontracted party, to the foreign state, which would have to show the ability to control on a daily basis. What role does the fact that the Harveys were not a party to the contract play in any of this? Well, I think it goes, again, to the gravamen of the complaint, which is that the Harveys were not injured by any contractual act of Sierra Leone. Now, the Harveys do argue that they were injured by Sierra Leone's alleged failure to discharge non-deductible duties under the New York City Commercial Code. But that would fall, if they were able to actually show that they alleged a tort, would fall under the non-commercial tort exception. So I'd like to turn, with my remaining time, to the question of the non-commercial tort exception. That was going to be my question, is if you could take some time to talk about that. And for the non-commercial tort exception to apply, the allegations of the complaint must show, and not just arguably show, and that's language from the Supreme Court's decision in Venezuela versus Helmer campaign, that Sierra Leone breached a duty that actually caused the plaintiff's property damage. And in this case, the allegations in the medical complaint do not show, even if they do arguably show, that the plaintiff suffered property damage that was caused by an alleged breach of a non-deductible duty. Okay, so I understand that you're speaking generally, and it was a bit hard because they argued a bunch of different violations. But is it your position that none of them met the standard? The one that I am spending a decent amount of time on is 3309.8, because they stated that they violated the duty, that they failed to take any steps, that led to gaps in the wall, which led to water and mold and damage, and the mission conceded that it breached. So I'm interested in just my colleagues may have other building codes, but I would like for you to explain to me why they didn't allege enough for this one. And as far as I can tell, one is enough, right? For the court to exercise jurisdiction over that, yes, one would be enough. So, Your Honor, you mentioned a couple of different potential injuries, so I think it's best if we take one by one. First, Your Honor, I believe you mentioned the issue of water infiltration, and you said that in the brief plaintiff's note that that was caused by gaps in the wall. But if you read the complaint closely, that's actually not what the complaint alleges was the cause of water infiltration. The paragraphs 50 to 51 of the complaint allege that water infiltration was caused by a failure to adequately waterproof the premises, which is not alleged to be a violation of a non-delegable duty. Now, plaintiffs suggest in their brief that the gaps in the wall did cause water infiltration, but assuming that the amended complaint could be read as alleging that the gaps in the wall postdated the renovations, which is not clearly alleged in the complaint, there's still no allegation of causation because the complaint merely speculates that the gaps in the wall might have been the cause of water infiltration. At paragraph 44, for example, they say that water can improperly seep, or they say it is a way that water may infiltrate, but that's insufficient to adequately allege causation in order to apply the noncommercial tort exception to the acts of a foreign sovereign. What about paragraph 40? And I'm quoting, I think I'm quoting, there are now unfilled gaps in the party wall that impair the structural integrity of the party wall and thus of the Harvey home. Doesn't that allege injury? If you say you have caused holes in my wall that impair the structural integrity, are you suggesting that the house has to fall down before there's an injury, or it seems to me it would be adequate to say you could put a hole in my wall, my wall is now structurally unsound. How is that not an injury? Your Honor, just to answer the first question, no, they do not have to allege that the wall must fall down. But again, I think it's important to look closely at what's alleged in paragraph 40, as you clearly have done. So under the Supreme Court standard in Venezuela versus Helmer campaign, the allegations of the complaint must show, and not just arguably show, both breach, causation, and injury. And here that allegation that there are gaps in the party wall that impair the structural integrity is insufficient. It calls for speculation because it fails to actually allege why the gaps cause. Well, again, you're doing it by injury. I'm doing it by building code section, but we have gaps in the wall which led to water and mold damage. Is that not causation? Respectfully, I don't think that the amended complaint alleges that the existence of gaps in the wall did lead to water infiltration. Again, as I mentioned in paragraph 44, it says it can. But even so, the amended complaint also fails to allege that the duty in 3309.81 was actually breached. It just contains a conclusory assertion that they failed to protect the party wall. Did you not concede that you breached 3309.82? Your 3309.82 is not one of the duties that's allegedly breached, and we've never conceded that we breached any of the duties under 3309.8. I'm sorry, and again, we're supposed to read the complaint in the light most favorable to the plaintiff, right? You're supposed to read the complaint in the light most favorable to the plaintiff. However, in this situation where we're dealing with a Rule 12b-1 motion to dismiss under the Foreign Sovereign Immunities Act, the Supreme Court's decision in Venezuela v. Helmer campaign counsels that the court must take a closer look at the allegations of the complaint and assure itself that the allegations do show and not just arguably show that a tort has been pleaded. So again, I'm just trying to read paragraph 40 in what I think is a common-sense way. And it says, The defendants' flouting of the DOB and basic safety principles extend to their treatment of the party wall, i.e., the wall shared by the mission of the Harveys, which has been weakened by defendants' faulty renovation efforts. So they specifically allege that the defendants' renovation has weakened the wall. And then the very next sentence says, There are now unfilled gaps in the wall. It seems, I don't see how you read that without saying that the renovations, the first sentence says they caused weakening. And then the very next section specifies the way in which the weakening has occurred. There are now unfilled gaps in the wall that impair the structural integrity of the party wall. I don't see how you read that in any way other than saying their renovation put a hole in the wall. But the renovation is speaking generally about the acts of the three different defendants. And with regard to applying the TOR exception, the complaint needs to clearly show why a failure of a non-delegable duty caused it. I thought that is a non-delegable duty under 3309.81, which is, you know, whatever that is. It's to protect the party wall. Maintain the structural integrity of the party wall. So in order to- Isn't that a non-delegable duty? It is. And they say that now we don't have structural integrity in the wall. And maybe they didn't, right? Maybe you haven't, maybe these are faked photos. Maybe you'll have evidence saying those, you know, somebody looks at it and says, Oh, those holes have been there for 50 years, long before we even bought the property. But the allegations say that the admissions renovations put those holes in the wall. I don't see how you get around that. And those allegations are the same type of allegations as if the plaintiff in Venezuela versus Humber campaign had said that rights and property are taken in violation of international law. It's too conclusory to permit the court to apply the TOR exception to hold it severely unliable. Now, it may be sufficient under Rule 12b-6, but it's not sufficient under Rule 12b-1. And for that reason, Your Honor, we ask that the court reverse the decision below and remand it with instructions to dismiss. Thank you very much. We'll hear back from you. You've held on to two minutes for rebuttal. Why don't we hear from the counsel for the appellee. Is that Ms. Jara? Hara. Hara. I'm sorry about that. That's okay. Okay, Ms. Hara, you have ten minutes. Ready? This is okay, you can hear me? Yes. Okay. May it please the court. My name is Ana Hara, and I represent the plaintiff's appellees, the Harveys, in this matter. The mission and its renovations are damaging the Harveys. The mission tore holes in the shared party wall that remain unfilled and impair the structural integrity of the Harveys' home. The mission did not install proper protections on the Harveys' roof or over the elevator shaft, which has caused and is continuing to cause substantial mold and water damage inside the Harveys' home. But the mission claims, as you just heard, that in a situation in which any private person would be liable, they are immune because they happen to be a part of a foreign sovereign. That is not the law. Under the FSIA, sovereign immunity does not apply when the mission is engaged, as Your Honor noted, in ordinary commercial activity like renovating its townhouse. Also under the FSIA, sovereign immunity doesn't apply when the mission is engaged in nondiscretionary, tortious activity like violating the New York City Building Code. I'd like to start with the commercial exception. The mission just argued that there are actually two different types of conduct here. Sierra Leone's commercial contract and the subcontractors and the general contractors' work. But that is simply not true. If we look at the complaint, the complaint alleges that the mission also performed and also had obligations under that contract. The complaint alleges, even in the very first sentence, it describes how the contractual renovations and the mission's performance of those contractual renovations injured the Harveys. In Nelson and Sachs, the Supreme Court explains that we have to look at the entirety of the complaint. We can't just zero in on specific terms or causes of action. And we have to look at the core or the foundation to determine what the activity is. Once we know what that activity is here, the contractual renovations on a townhouse, and the mission's performance of that contract, then the question becomes, is that activity peculiar to the sovereign, or can any person in the marketplace participate in that conduct? And here, anyone can hire a private contractor to renovate a townhouse. That is not peculiar to the sovereign. Then we have to look to see if the complaint is based upon commercial activity in the United States by the foreign sovereign. The gravamen of the complaint here are the contractual renovations of the mission and its performance. The Harveys' injuries here only exist because of the mission's contractual obligations. So what I'm struggling with, and I appreciate that you keep using the word contractual, is the Harveys aren't part of that transaction. So I think the harder question is about the non-commercial exception. But would we be the first to find that a third party is subject to commercial activity in a contract that they weren't part of? So to address the issue of the Harveys not being a part of the contract, the plain language of the statute is very broad in that it allows inaction. Based upon a commercial activity, it doesn't require a breach of contract. But to specifically address whether you would be the first court to do so, there are other courts who have found commercial activity where there has not been a contract at all. And what I mean by that is, for example, in Pueblo Star, this court found in a copyright infringement case that the promotion on the website of the Welsh government advertising, that that was a copyright infringement and there was no contract between the plaintiff in that case and the mission. There were other contracts. There were contracts with New York consulting companies and advertising companies to run those ads. But the plaintiff itself was not a part of that contract. The same is true in a case that the mission actually cited. It's out of the First Circuit in Universal. In Universal, that court spoke about other cases, namely from the 11th Circuit, where one of those cases there was not a contract. It was basically, I believe it was Peru, was asking for a reward for finding someone. And so there was no actual contract in that case that's described in the Universal case. So a contract is not necessary, not only based on the plain language of the statute, but also on some courts who have interpreted it more broadly. I hear that, but I mean, the private party needs to engage in trade, traffic, or commerce, right? You can see that. That's correct. And so I'm presuming you're saying this one is commerce? Yes, Your Honor. I didn't say commerce. If the Harveys weren't engaged in that commerce, how are they covered under the protections here? So under the plain language of the statute, we have to look at Sierra Leone's conduct and what Sierra Leone's activities are. So in this instance, the commercial activity of Sierra Leone was the renovations of the townhouse, was entering into that contract and then performing that. And it so happens that in the performance, in Sierra Leone's performance of that commercial activity, the Harveys were injured. The Harveys' injuries are directly a result of what happened with the renovations. And I think that if we look at cases like Nelson and Sachs, I think our case is fairly distinguishable because, and I think Nelson kind of touches on what Your Honor speaks about. So in Nelson, for example, the issue there was that it was an employment contract and his injuries actually related to the Saudi Arabian government basically capturing and torturing him. And the court found there that his injuries were not actually employment related. They had no connection to the commercial activity there. It was totally untethered from the actual employment contract at issue. Whereas here, the commercial activity, as I've said repeatedly, is the contractual renovations and the mission's performance. And that is exactly what has injured the Harveys. The Harveys' injuries are based directly on that commercial conduct. Also, 1605A2 requires only that Sierra Leone be engaged in the commercial activity, not that they have a commercial relationship with the parties. That's also based on the plain language of the statute. So at the risk of, again, using a ridiculous hypothetical, is it your view that if Sierra Leone had set up a passport renewal stand on the sidewalk and the Harveys walked by and they'd slipped and fallen because of an unsafe condition, that would not be a commercial activity and the mission would be immune from suit? But if they had set up a lemonade stand to make some money, to raise money for construction or whatever, and the Harveys walked by and slipped, the mission would not be immune from suit. Is that sort of a ridiculous sort of analogy to sort of illustrate the difference? I think so, Your Honor. But I would just like to clarify that under Nelson and Sachs, it would be very dependent on what the complaint says and what the mission's activities were there. So in the hypothetical, it's a lot like the Robinson case where the individual did fall. And there, even though that was a 1605A5 case, the court did look at, oh, you know, like the plaintiff didn't allege anything that the mission did there. Like the mission basically just hired someone and walked away and they ended up leaving that white substance on and the person slipped and fell. So I think your hypothetical is probably more similar to that, where there weren't non-delegable duties alleged, there weren't perhaps commercial contracts alleged, there wasn't really any sort of commercial activity that directly injured the plaintiffs in those hypotheticals. Can I ask you to turn to the tortious activity exception for a minute? Let me ask you, in your view, let's say we were to agree with your side on one of your theories of negligence. And let's just say the party won't. Let's say we thought that the allegations in the complaint were adequate to demonstrate your entitlement to exemption from the immunity provisions as a tortious activity with respect to that. Would that save the entire negligence claim if we did not agree with you about the other aspects? In other words, would your negligence claim be either narrower or broader, depending on our analysis of each of the individual bases, or sort of once you trigger the tortious activity exception, in your view, does that sort of sweep everything in? What's your view on that? I believe that once you've triggered the tortious exception, then all of them would fit in. And what's the basis for that? So I would say that the basis of that is really, well, I guess there's like two bases. One is in Namibia, this court actually talked about how if there is a non-delegable duty and there are sufficient allegations, then in some instances under 12b.1, you can draw all reasonable inferences in the plaintiff's favor. And I think here that if the court were to find, for example, that the holes in the party wall were a violation of 3309.8, then I think that there's a reasonable inference that the holes in the party wall probably caused structural damage and that the holes in the party wall were related to foundation work, for example, or that the holes in the party wall related to the mold. And so I think that once the court finds that one of the duties applies, then I think immunity is lifted, I guess is the way that I would describe it. So there's nothing sovereign about the mission renovating its townhouse and injuring the Harveys, both the commercial and tort exceptions to the FSIA apply here and allow the Harveys to hold the mission responsible for its wrongful acts. And so if there are no further questions, we request that the court affirm the order below. Thank you very much. Thank you. So, Mr. Rensselaer, I want to hear from you. Could you just address the question I just last asked? I'm curious as to your view of the scope of the tortious activity. Let's say, again, hypothetically we would agree with one strand of your opponent's arguments. Let's say the party wall under, was it 3309.8, whatever it is, 2, or whatever it is for the party wall. Let's say we agree with that. Would that, in your view, lift immunity for the mission as to all of their negligence claim? Or is it just for that one thread? And whatever your answer might be, what's the basis for your view? Absolutely not. It would just lift it for the one tort, complete tort that the court found the factual allegations of the complaint actually showed. And the reason for that is the statutory text itself, which says that the noncommercial tort exception applies to claims for money damage for property, for damage to property caused by a tortious act of a foreign state. So the jurisdictional ambit, the application of that exception, would only be to whichever negligent act the court found the factual allegations showed caused the plaintiff's actual property damage. So it's very narrow. And it's very important to underscore this because, as I've referred to in my opening statements, under the Supreme Court's decision in Venezuela versus Humber campaign, the court is to take a very strict view of what the allegations in the complaint are. And that's because the purpose of the Foreign Sovereign Immunities Act is to free a foreign sovereign from the burdens of litigation. So the court must review the complaint very closely to determine whether the allegations of the complaint show, and not just arguably show, whether a tortious act or omission of Sierra Leone actually caused plaintiff's property damage. And that's why, to go back to the discussion we were having earlier about the party wall, the allegation in paragraph 40 of the complaint is insufficient to show that a breach of a nondeligible duty caused the plaintiff's harm, because they must do more than just say, this happened and I had harm. So, for example, in Venezuela versus Humber campaign, the court found that the expropriation exception, which concerns claims where there are rights taken in violation of international law are an issue, that the undisputed facts there had to show that those rights were in fact taken in violation of international law. Likewise here, the factual allegations must show that any injury that was suffered was in fact caused by a tortious act or omission of the mission. There was some suggestion in the record that because of the lower court order to the contractors, and that they were precluded from doing some of the remedial measures because of the mission. How does that impact your argument about the separation between the contractor and the mission? Your Honor, first to answer the factual point, which is that the mission has never impeded the ability of the contractors to access the premises. We've always said that they're able to access it. But more importantly, on the legal question, it's completely irrelevant, because the court's task at this moment is to look at whether the allegations in the complaint show, and not just arguably show, that a tortious act or omission of Sierra Leone caused plaintiff's property damage. And because it does not, the court must reverse the decision and remand it with instruction to dismiss. If there are no further questions, I thank you for your time. No, thank you very much to both sides. We will take the case on submission. Okay, having completed the calendar, and having taken all of our cases on submission, the court will now stand adjourned.